IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | |
|---|---|
| **In re:** <br><br> **Port Arthur Steam Energy, LP,** <br><br> **Debtor.** | **Chapter 11 (Subchapter V)** <br><br> **Case No. 21-60034** |

**JOINDER OF OXBOW CALCINING LLC TO THE
OBJECTION OF UNITED STATES TRUSTEE TO
DEBTOR'S DESIGNATION AS A SUBCHAPTER V SMALL BUSINESS DEBTOR**

Oxbow Calcining LLC ("Oxbow"), a creditor in the above-captioned chapter 11 case (the "Case") of Port Arthur Steam Energy, LP ("PASE" or the "Debtor"), files this *Joinder* (the "Joinder") to the *Objection of United States Trustee to Debtor's Designation as a Subchapter V Small Business Debtor* (the "Objection") and respectfully represents as follows:

**I.
PRELIMINARY STATEMENT**

1. From top to bottom, PASE's bankruptcy filing is riddled with intentional, fatal flaws aimed solely at furthering its litigation campaign against PASE's largest creditor, Oxbow. Those flaws include both:

   - *procedural defects* (*e.g.*, filing the Case in the Victoria Division when it bears no nexus to that division in blatant disregard for the Court's local rules specifying the division in which a case must be commenced); and

   - *substantive defects* (*e.g.*, various glaring omissions and misrepresentations in PASE's bankruptcy filings,[1] including without limitation, chapter 11 petition, schedules and statement of financial affairs, aimed at, among other things, ostensibly concealing estate assets and prepetition transfers to insiders and others, and an overt attempt to abuse the Court's jurisdiction and the bankruptcy process

---

[1] As but one example, PASE's chapter 11 petition repeatedly lists the total amount of nonpriority, unsecured claims as "$224,000," when in fact Oxbow's judgment against PASE undisputedly totals over $2 million in liabilities. *Compare* Dkt. 1 at 23, 26, *with* Ex. A, Deyoe Deposition Tr. at 61–62 (admitting that reported "number is incorrect" and that the amount in dispute is over $2 million).

itself solely as a forum-shopping tool for pending state court litigation against Oxbow). In due course, Oxbow will raise those defects through the appropriate motions—*i.e.*, for an intra-district venue transfer, to abstain or remand PASE's adversary proceeding, and to dismiss the Case as a bad-faith filing.

2. In the meantime, however, the Court has before it another preliminary defect: PASE's election to proceed as a "small business debtor" under subchapter V of chapter 11 of the Bankruptcy Code. The U.S. Trustee has rightfully objected to that designation, which has profound implications for the administration of the Case and, importantly, to the rights and interests of PASE's creditors and other parties in interest. A straightforward reading of the plain text of subchapter V and the policy behind it compels the conclusion that PASE—which has self-professedly not been operating for *years*—cannot qualify as a small business debtor, nor should it. Permitting this Case to proceed under subchapter V would effectively hand PASE the reigns and allow it to run roughshod over legitimate creditors such as Oxbow to their detriment. Accordingly, the Court should sustain the Objection for the reasons set forth herein.

## II.
## BACKGROUND

3. On April 14, 2021 (the "Petition Date"), PASE filed its chapter 11 voluntary petition (the "Petition"), designating itself as a "small business debtor" under subchapter V of chapter 11 of the Bankruptcy Code. *See* Dkt. 1.

4. On May 5, 2021, the United States Trustee for Region 7 (the "U.S. Trustee") filed the Objection, asserting that PASE's subchapter V designation was erroneous and requesting the Court order the Case to proceed as a non-subchapter V debtor case. Dkt. 10. The Court has set the Objection for a hearing on June 23, 2021.

5. On May 26, 2021, PASE filed a response to the Objection (the "Response"), defending its decision to elect to proceed as a subchapter V debtor. Dkt. 26.

6. Oxbow files this Joinder to the Objection by the U.S. Trustee.

## III.
## DISCUSSION

**A.    The purpose and ramifications of subchapter V proceedings**

7. In August 2019, Congress passed the Small Business Reorganization Act of 2019 (the "SBRA"), creating subchapter V of chapter 11 and allowing those who qualify as a "small business debtor" to take advantage of its protections.

8. "[T]he primary purpose of the SBRA is to promote *successful reorganizations*" for small busines debtors "using the tools that are now available under current law." *In re Progressive Sols., Inc.*, 615 B.R. 894, 900 (Bankr. C.D. Cal. 2020) (emphasis added). It does so by "identify[ing] those debtors who are in particular need of the benefits of small business debtor treatment" and according them "benefits that are largely designed to facilitate expediency and minimize cost." *In re Johnson*, No. 19-42063-ELM, 2021 WL 825156, at *6 (Bankr. N.D. Tex. Mar. 1, 2021). By "facilitat[ing] quicker and cheaper reorganizations," Congress hoped to "provide [those small business debtors] with a realistic option for reorganizing and saving their business operations," *In re Trepetin*, 617 B.R. 841, 846 (Bankr. D. Md. 2020), outside of the traditional (but costly) chapter 11 route or the forced liquidation and cessation of operations under a chapter 7 proceeding.

9. To name a few examples of that streamlined process, subchapter V "allows only the debtor to file a plan and permits the debtor to retain its prepetition ownership structure even if creditors are not paid in full." *Id.* Moreover, a subchapter V debtor may proceed as a "debtor-in-possession" and thus "remain[] in control of the bankruptcy case," and may have its reorganization

plan confirmed "even if a class of claims has rejected the plan," *§ 4:15. Subchapter V*, STRAT. ALT. DIS. BUS. § 4:15. Indeed, a subchapter V debtor can confirm a plan without the support of a single creditor voting to accept the plan.

10. Thus, subchapter V grants substantial protections to those who are properly treated as small business debtors, while also posing an enormous risk of prejudice to creditors who are effectively at the mercy of those debtors. That delicate balance makes it even more important for the Court to carefully scrutinize PASE's designation here.

**B.     PASE does not qualify as a small business debtor under subchapter V**

11. In dispute in this Case is subchapter V's requirement that a small business debtor must be, among other things, a "person engaged in commercial or business activities." 11 U.S.C. § 1182(1)(A). The U.S. Trustee's Objection explains why PASE does not meet this requirement, Dkt. 10 ¶¶ 10–28, and PASE's Response fails to remedy that fatal defect.

*i.     PASE tacitly concedes the contemporaneous nature of the "engaged in" requirement*

12. As explained in the Objection, Dkt. 10 ¶ 23, in the wake of subchapter V's enactment, some courts took a "minority position" that "subchapter V does not require debtors to be *currently* engaged in business activities on the petition date." *In re Blue*, No. 21-80059, 2021 WL 1964085, at *6 (Bankr. M.D.N.C. May 7, 2021) (emphasis added) (discussing, *e.g.*, *In re Wright*, No. 20-01035, 2020 WL 2193240 (Bankr. D.S.C. April 27, 2020)). The majority of courts, however, have construed the "plain meaning of 'engaged in'" as meaning "to be actively and currently involved." *See, e.g.*, *In re Thurmon*, 625 B.R. 417, 422 (Bankr. W.D. Mo. Dec. 8, 2020); *In re Ikalowych*, Case No. 20-17547, 2021 WL 1433241, at *13 (Bankr. D. Colo. Apr. 15, 2021); *In re Offer Space, LLC*, Case No. 20-27480, 2021 WL 1582625, at *4 (Bankr. D. Utah Apr. 22, 2021). In other words, those courts conclude that the "'engaged in' inquiry is inherently

contemporary in focus instead of retrospective, requiring the assessment of the debtor's current state of affairs *as of the filing of the bankruptcy petition.*" *In re Johnson*, 2021 WL 825156, at *6 (emphasis added).

13. PASE does not contest this majority line of cases or that the definition of "small business debtor" requires a showing of contemporaneous commercial or business activity as of the Petition Date. Instead, PASE seemingly acknowledges the "present tense requirement" and states that it "does not believe that this particular issue is in dispute," nor that it is "dispositive." Dkt. 26 ¶ 6. Thus, without any opposition from PASE, the Court can and should apply the well-reasoned analysis of the cases collected above and analyze whether PASE was "presently engaged in commercial or business activities on the date of filing the petition for relief," *In re Offer Space*, 2021 WL 1582625, at *4—not whether it was so engaged "at some point in the past," *In re Johnson*, 2021 WL 825156, at *6.

> ### ii. *PASE was not engaged in commercial or business activities on or anywhere near the Petition Date*

14. Rather than dispute the "present tense requirement," PASE suggests that it *was* presently engaged in commercial and business activity on the Petition Date because it "has 3 employees, a bank account, personal property assets, litigation claims, and receivables, and they are and have been working to reasonably liquidate the assets in order to pay their creditors." Dkt. 26 ¶ 10. That is wrong for several reasons.

15. *First*, PASE's recitation of its "activities" is counterfactual. The recent Rule 2004 Examination of PASE's corporate representatives confirmed the following:

- PASE does not have "3 employees." PASE's corporate representatives admitted that Mr. Deyoe and Mr. Boriack are actually principals of Integral Power, LLC (PASE's limited partner)—"not direct employees" even though PASE "typically

5

- refer[s]" to them as such. Ex. A, Deyoe Deposition Tr. at 17, 83, 85.[2] And for PASE's third purported "employee," Nathan Dickman, PASE does not pay his social security taxes, which indicates he is in fact an independent contractor. Ex. B, Boriack Deposition Tr. at 51.

- Despite PASE's claim to have "accounts receivable," the only sum claimed is for a $163,332.19 electricity invoice to Oxbow that does not reflect offsets for sublease payments due from PASE to Oxbow that remain unpaid. Ex. B, Boriack Deposition Tr. at 21, 26, 30–31 (PASE corporate representative unable to recall any $64,000 lease payments made during January, February, March, or April of 2021).

- Despite PASE's claim to have been "reasonably liquidat[ing] the assets," PASE only began the process "a couple of months ago," has only completed two small asset sales (approximately $35,000), and did not have discussions with any potential buyers in 2020—all despite having been out of operation since June 25, 2018. Ex. B, Boriack Deposition Tr. at 37–38, 69. All the while, PASE has waged a costly litigation battle against Oxbow in various forums, losing at each step and depleting its cash supply. *E.g.*, *id.* at 32, 34 (discussing four years of Oxbow-related litigation expenses, including over $966,000 in 2020 alone, while at the same time paying its limited partner Integral Power $450,000 annually); Ex. C, PASE 2019 General Ledger (listing approximately $1.4 million in Oxbow-related litigation expenses)[3]; Ex. D, PASE 2021 General Ledger (listing $150,000 in payments to Integral Power in the first four months of 2021).[4]

16. ***Second***, PASE's ostensible definition of "commercial or business activity" sweeps too broadly. As a bankruptcy court in this Circuit concluded—after having analyzed the common meanings of the terms "commercial" and "business"—the "ordinary meaning of 'commercial or business activities'" in subchapter V relates to one "engaged in the exchange of *buying and selling economic goods or services for profit*." *In re Johnson*, 2021 WL 825156, at *8 (emphasis added). And yet PASE's own Chapter 11 Plan concedes that PASE has not operated its steam plant—its sole source of business revenue—since June 25, 2018. Dkt. 3 at 2. The Rule 2004 Examination—

---

[2] Counsel for Oxbow conducted a Rule 2004 Examination of, *inter alia*, PASE's corporate representatives Raymond Deyoe ("Mr. Deyoe") and Ted Boriack ("Mr. Boriack"), whose depositions are cited and referenced herein as the "Deyoe Deposition" and "Boriack Deposition" respectively. The Deyoe Deposition is attached as **Exhibit A** to this Joinder, and the Boriack Deposition is attached as **Exhibit B** to this Joinder.

[3] An excerpt from PASE's 2019 General Ledger, produced as part of the Rule 2004 Examination process, is attached as **Exhibit C** to this Joinder.

[4] An excerpt from PASE's 2021 General Ledger, produced as part of the Rule 2004 Examination process, is attached as **Exhibit D** to this Joinder.

consistent with previous PASE testimony—only confirmed that fact. *See* Ex. B, Boriack Deposition Tr. at 9 (testifying that PASE has had "no stream revenue" since the shutdown); 50 ("[W]e're shut down from an operating standpoint and we don't have work in progress."); Ex. E, 11/18/2020 Hearing Tr. at 72 ("we haven't received any revenues since whenever it was, June of 2018").[5]   Courts have found small business debtor status lacking under similar circumstances.  In *Thurmon*, for example, the court rejected a subchapter V election when the debtor "had no employees, no customers, no vendors, and no intent to resume business activities," despite the fact that it "still own[ed] some outstanding accounts receivable and" other assets and was "still an entity in good standing under Missouri law."  625 B.R. at 420.  So too here, where PASE has some assets to sell but no actual employees, no revenue stream, no work in progress, no budgets or forecasts, and has been out of operation for nearly three years.  *Supra* ¶ 15; Ex. B, Boriack Deposition Tr. at 9 (no revenue), 34 (no projections or forecasts); 50 (no work in progress).

17. ***Third***, and contrary to PASE's suggestion, a definition of "commercial or business activities" keyed to the debtor's ongoing business operations makes perfect sense considering the legislative policy goals at issue in the SBRA.  Again, the goal of the SBRA is to facilitate "cost-effective" bankruptcies for certain debtors that will "hopefully allow them to *remain in business*." *In re Johnson*, 2021 WL 825156, at *6 (emphasis in original) (quoting  H.R. Rep. No. 116-171, 116th Cong., 1st Sess. (2019)).  It makes little sense to apply those protections to a debtor, like PASE, that "had ceased all commercial and business activities prior to the Petition Date" and that has no intention "to resume operations." *Id.* at *7.  Indeed, PASE has announced its intention not to reorganize but rather "to *liquidate* in an orderly fashion." Dkt. 3 at 3 (emphasis added).  PASE's

---

[5]   An excerpt from the transcript of a November 18, 2020 bond hearing in the case styled *Oxbow Calcining LLC v. Port Arthur Steam Energy, L.P.*, Cause No. 2020-18313, in the 270th Judicial District Court of Harris County, Texas, is attached as **Exhibit E** to this Joinder.

7

supposed liquidation plans only serve to illustrate its poor fit in the reorganization-minded subchapter V, especially since chapter 7 already exists as an adequate, low cost liquidation mechanism readily available to small business debtors even before the passage of the SBRA.

18.     *Fourth*, even if the Court is inclined to adopt the more expansive view of commercial or business activities discussed in *Offer Space* (PASE's only cited, yet flawed, authority), the circumstances here would remain distinguishable.  In that case and in a similar decision, *Ikalowych*, the courts stressed that the debtor's operations ceased and wind-down activities began *shortly before* the bankruptcies.  *In re Offer Space*, 2021 WL 1582625, at *7 (stressing that "the Debtor filed for bankruptcy protection within a matter of months after informing vendors of its inability to continue providing services"); *In re Ikalowych*, 2021 WL 1433241, at *1 (noting that "[t]he failure of [the company] *triggered* the Debtor's own bankruptcy") (emphasis added).  Indeed, those cases applied a "totality of the circumstances" test, and *Ikalowych* found that its record "just barely" qualified for small business debtor treatment. 2021 WL 1433241, at *15. Further still, *Ikalowych* explicitly acknowledged and distinguished its record from "compelling authority" like *Thurmon* and *Johnson*, *id.* at *15, in which the debtors ceased operating long before bankruptcy and which much more closely approximate PASE's circumstances here, for reasons discussed above.  *E.g.*, *Johnson*, 2021 WL 825156, at *2 (the various companies ceased commercial and business activities either two years, one year, or four months prior to bankruptcy filing); *supra* ¶ 16 (discussing the parallels between this case and *Thurmon*).  Thus, even under a more expansive view of "commercial or business activities," PASE's long period of non-operation falls clearly on the "not engaged in" side of the spectrum and renders PASE's only cited authority inapposite.

## IV.
## CONCLUSION

**WHEREFORE**, Oxbow respectfully requests the Court sustain the U.S. Trustee's Objection and grant all further relief as the Court may deem just and equitable.

Dated: June 22, 2021
Houston, Texas

Respectfully submitted,

**BAKER BOTTS L.L.P.**

*/s/ David R. Eastlake*
Michael S. Goldberg
Texas State Bar No. 08075800
*michael.goldberg@bakerbotts.com*
Kevin T. Jacobs
Texas State Bar No. 24012893
*kevin.jacobs@bakerbotts.com*
David R. Eastlake
Texas State Bar No. 24074165
*david.eastlake@bakerbotts.com*
910 Louisiana Street
Houston, Texas 77002-4995
Telephone:   713.229.1234
Facsimile:   713.229.1522

*Counsel for Oxbow Calcining LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 22, 2021, I caused a copy of the foregoing to be served on all parties eligible to receive service through the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas by electronic mail

*/s/ David R. Eastlake*
David R. Eastlake