5

**Exhibit E**

**November 18, 2020 Bond Hearing Transcript (Excerpted)**

```
 1                    CAUSE NO. 2020-18313
 2   OXBOW CALCINING LLC           )   IN THE DISTRICT COURT OF
                                   )
 3              Petitioner,        )
                                   )
 4   v.                            )   HARRIS COUNTY, TEXAS
                                   )
 5   PORT ARTHUR STEAM ENERGY,     )
     L.P.,                         )
 6                                 )
                Respondent.        )   270TH JUDICIAL DISTRICT
 7   *********************************************************
 8
               TRANSCRIPTION OF AUDIO RECORDINGS
 9       2020-11-18-#13.mp3 and 2020-11-18-#14.mp3
10     HEARING ON MOTION TO INCREASE AMOUNT OF SECURITY
                    TO SUPERSEDE JUDGMENT
11
                      NOVEMBER 18, 2020
12
                        VOLUME 1 OF 1
13
     *********************************************************
14
15
16         Hearing before the 270th District Court
17   of Harris County, Texas, in Cause No. 2020-18313,
18   on the 18th day of November, 2020, via Zoom, before the
19   HONORABLE DEDRA DAVIS, Judge Presiding.
20           Pursuant to information contained on the audio
21   recording and information submitted to the
22   court-approved transcriber at the time the request for
23   transcription was made, the following includes all
24   parties present.
25
```

1  bank account?
2      A.  We do not.
3      Q.  Is Exhibit 17 that was provided to the judge a
4  true and accurate statement of PASE's cash position as
5  of the end of October 2020?
6      A.  It is, yes.
7      Q.  Has PASE paid bills since the end of October of
8  2020?
9      A.  We have.  We've paid a few.
10     Q.  Okay.  Is this account information which was
11 provided to the judge the only cash that PASE has
12 available?
13     A.  That is the only cash we have, yes.
14     Q.  Does PASE have the ability to borrow money at
15 this point?
16     A.  We -- we do not.  I mean, contrary to what I
17 heard Mr. Goldberg say, we're not part of a hedge fund
18 anymore.
19              We're a standalone entity.  We have the
20 cash that we have.  We haven't been part of a hedge fund
21 in almost ten years.  So I don't know where he's getting
22 that, but -- but there -- there is no more money.  We
23 have no ability to borrow money because we haven't
24 received any revenues since whenever it was, June of
25 2018, I believe, or July of 2018, whenever Oxbow finally

1   cut off all of our heat.  And so we have no way to
2   borrow, and -- and the -- the -- the owners of the -- of
3   the asset are -- have already said what we have to fight
4   with is what we have to fight with and that's it.
5       Q.  If PASE were to put up more than a million
6   dollars in security as Oxbow is requesting pending the
7   outcome of this appeal, would that cause significant
8   harm to PASE?
9       A.  It would be devastating harm.  Yes, it -- it
10  would -- it would -- yes.
11      Q.  And -- and would PASE be able to continue the
12  appeal for any protracted period of time without the
13  available cash?
14      A.  No.
15              THE COURT:  Sir, you said your legal fees
16  were under which exhibit?
17              MR. NEAL:  Your Honor, Exhibit 18 --
18              THE COURT:  Oh --
19              MR. NEAL:  -- was my affidavit.  And --
20              THE COURT:  Thank you.
21              MR. NEAL:  -- in my -- my projected legal
22  fees, I -- I -- I told you what we paid for the -- the
23  arbitration that was concluded.  I say "we."  I'm
24  referring to PASE.  And -- and then I projected the
25  legal fees on a going-forward basis.