

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| PORT ARTHUR STEAM ENERGY, L.P. | § | CASE NO: 21-60034 |
|     Debtor | § | |
| | § | CHAPTER 11 |
| | § | (Subchapter V) |
| | § | |

**MEMORANDUM ORDER OVERULLING OBJECTIONS
TO DEBTOR'S SUBCHAPTER V DESIGNATION**
**(RE: Docket Nos. 10, 40)**[1]

    Port Arthur Steam Energy, L.P. ("**PASE**") commenced a bankruptcy case and elected to proceed under Subchapter V of chapter 11. The United States Trustee and Oxbow Calcining LLC objected to the Subchapter V designation. Section 1182(1)(A) of the Bankruptcy Code defines a Subchapter V debtor as, among other things, "a person engaged in commercial or business activities." On the petition date, PASE was not conducting its historical business operations. But it was engaged in commercial and business activities. As a result, PASE qualifies as a Subchapter V debtor and the objections are overruled.

## Background

    Beginning around 2005, PASE owned and operated a waste heat facility in Port Arthur, Texas. Under a Heat Energy Agreement with Oxbow, PASE bought flue gas energy from Oxbow.[2] PASE used the flue gas to generate steam and some electricity. PASE sold the steam to Valero Port Authority Refinery and sold some electricity back to Oxbow. PASE subleased the land for its facility from Oxbow.

    PASE and Oxbow's relationship started deteriorating around 2010–2011. In 2015, PASE obtained a multi-million-dollar judgment against Oxbow. Then, in 2018, Oxbow suspended flue gas energy delivery to PASE. As a result, PASE could not deliver steam to Valero. Valero ultimately terminated its contract with PASE.

---

[1] If any finding of fact is construed as a conclusion of law, it is adopted as such. If any conclusion of law is construed as a finding of fact, it is adopted as such. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

[2] Oxbow's predecessor-in-interest was the original counterparty.

The parties dispute whether Oxbow had a right to suspend performance or whether it breached the terms of the Heat Energy Agreement.[3] Eventually, the parties arbitrated their disputes in 2019. In early 2020, an arbitration panel ruled that Oxbow had no liability to PASE. In July 2020, the 270th Harris County District Court in Texas affirmed the Oxbow arbitration award. PASE appealed to the Houston First Court of Appeals. The appeal remains pending today.

In March 2021, PASE filed an original petition and application for declaratory relief against Oxbow in the 284th Montgomery County District Court in Texas, which was then transferred to another Harris County District Court.[4]

PASE filed this Subchapter V chapter 11 case one month later. PASE filed a chapter 11 plan that, among other things, pays creditors by liquidating all remaining assets and distributing any recovery under the Oxbow litigation. On the petition date, the PASE facility was maintained by a contract employee and two members of Integral Power, LLC (the Debtor's limited partner) under a management agreement. PASE was not, however, selling steam or electricity to any party.

The United States Trustee and Oxbow objected to PASE's Subchapter V designation. Section 1182(1)(A) defines a debtor as, among other things, "a person engaged in commercial or business activities." 11 U.S.C. § 1182(1)(A). The objectors argue that PASE cannot satisfy this definition. PASE disagrees.

## **Subchapter V Election**

The Small Business Reorganization Act of 2019 provided a new Subchapter V to chapter 11 of the Bankruptcy Code. PASE elected to proceed as a Subchapter V debtor in its voluntary petition. Interim Bankruptcy Rule 1020(a) states that a debtor proceeds under Subchapter V unless a court orders otherwise.[5] If a party-in-interest objects, the debtor bears the burden of proving eligibility under Subchapter V. *See In re Blue,* Case No. 21-80059, 2021 WL 1964085, at *4 (Bankr. M.D.N.C. May 7, 2021); *In re Offer Space, LLC*, Case No. 20-27480, 2021 WL 1582625, at *2 (Bankr. D. Utah Apr. 22, 2021); *In re Ikalowych*, Case No. 20-17547, 2021 WL 1433241, at *7 (Bankr. D. Colo. Apr. 15, 2021).

---

[3] The Court makes no finding about whether Oxbow had a right to do so. That issue is not relevant to rule on the objections.

[4] PASE recently removed this litigation to this Court.

[5] Interim Amendments to the Federal Rules of Bankruptcy Procedure, https://www.uscourts.gov/sites/default/files/2019_sbra_interim_rules_amendments_redline_0.pdf.

Section 1182(1)(A) states:

(1) Debtor.—The term "debtor"—

(A) subject to subparagraph (B), means a person engaged in commercial or business activities (including any affiliate of such person that is also a debtor under this title and excluding a person whose primary activity is the business of owning single asset real estate) that has aggregate noncontingent liquidated secured and unsecured debts as of the date of the filing of the petition or the date of the order for relief in an amount not more than $7,500,000 (excluding debts owed to 1 or more affiliates or insiders) not less than 50 percent of which arose from the commercial or business activities of the debtor.

11 U.S.C. § 1182(1)(A).

Here, the objectors argue that PASE is not a person engaged in commercial or business activities.[6]

PASE is a limited partnership and thus satisfies the definition of "person" under Section 101(41) of the Bankruptcy Code.[7] The Bankruptcy Code, however, does not define "engaged in commercial or business activities," so the Court applies its plain meaning. *See BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 184 (2004); *Franco v. Mabe Trucking Co.*, 991 F.3d 616, 621 (5th Cir. 2021).

The definitions of "engaged," "commercial," "business," and "activity" has remained the same over time. Engaged means "involved in activity."[8] The Court agrees with cases holding that "engaged in" commercial or business activities means a debtor was actively participating in one of these activities on the petition date. *See, e.g.*, *In re Blue*, 2021 WL 1964085, at *6; *In re Offer Space, LLC*, 2021 WL 1582625, at *4; *In re Johnson*, Case No. 19-42063, 2021 WL 825156, at *6 (Bankr. N.D. Tex. Mar. 1, 2021).

Commercial means "of or relating to commerce" and "viewed with regard to profit."[9] Commerce means "the exchange or buying and selling of commodities on a

---

[6] No party contests that PASE satisfies the remaining requirements under Section 1182.

[7] 11 U.S.C. § 101(41). The term "person" under Section 101(41) includes a partnership.

[8] *Engaged*, Merriam-Webster Online Dictionary (www.merriam-webster.com/dictionary/engaged) (last updated June 26, 2021). *See also Engaged*, Webster's Third New Int'l Dictionary (1976) ("Occupied, employed").

[9] *Commercial*, Merriam-Webster Online Dictionary (www.merriam-webster.com/dictionary/commercial) (last updated June 26, 2021). *See also Commercial*, Webster's Third New Int'l Dictionary (1976) (same).

large scale involving transportation from place to place."[10] Business means "a usually commercial or mercantile activity engaged in as a means of livelihood," or "dealings or transactions especially of an economic nature."[11] Finally, "activity" means "the quality or state of being active: behavior or actions of a particular kind."[12]

PASE was not selling steam or electricity on the petition date. But it was engaged in commercial and business activities. For example:

- PASE was managed by two principals of its limited partner under a management agreement. An independent contractor also worked for PASE.

- PASE was litigating a multi-million-dollar lawsuit against Oxbow.

- PASE was pursuing collection remedies on an outstanding account receivable of about $163,000 from Oxbow.

- PASE actively maintained its facility and vehicles. Individuals routinely worked on site to preserve the value of PASE's assets. This included running the technical parts of the facility, maintaining utilities like power and water, and making repairs after severe storms that unfortunately occur in that area.

- Preceding the bankruptcy filing, PASE's managers worked on a plan to sell assets and pay creditors in chapter 11, including bundling certain assets; prepared photographs and specifications information for potential buyers; and hosted plant visits. PASE estimated the value of these assets at around $3 million.

- PASE sold an asset worth about $35,000 in the months before the bankruptcy filing.

- PASE filed reports and tax returns as required by state and federal agencies.

Thus, actively pursuing litigation against a third party, seeking to collect on outstanding accounts receivable, selling an asset, preserving asset value and having managers oversee the company while an independent contractor maintained the

---

[10] *Commerce*, Merriam-Webster Online Dictionary (www.merriam-webster.com/dictionary/commerce) (last updated June 22, 2021). *See also Commerce*, Webster's Third New Int'l Dictionary (1976) (same).

[11] *Business*, Merriam-Webster Online Dictionary (www.merriam-webster.com/dictionary/business) (last updated June 29, 2021). *See also Business*, Webster's Third New Int'l Dictionary (1976) (same).

[12] *Activity*, Merriam-Webster Online Dictionary (www.merriam-webster.com/dictionary/activity) (last updated July 1, 2021). *See also Activity*, Webster's Third New Int'l Dictionary (1976) (same).

PASE facility are all commercial and business activities. Oxbow points out that PASE did not have W-2 employees, but neither do many U.S. small businesses, and, regardless, that is not required under Section 1182(1)(A). This Section also does not require a debtor to maintain its core or historical business operations on the petition date. It requires that the debtor was engaged in commercial or business activities. PASE satisfies this requirement.

The objectors refer to legislative history in their pleadings to argue that the Small Business Reorganization Act is intended to promote reorganizations. But this does not change the outcome. The text of Section 1182(1)(A) is not ambiguous, so there is no need to consider legislative history. The Court will "presume that [the] legislature says in a statute what it means and means in a statute what it says there." *See BedRoc Ltd., LLC v. United States*, 541 U.S. at 183 (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992)); *Esquivel v. Lynch*, 803 F.3d 699, 705 (5th Cir. 2015) (same). And while not germane to this matter, the Court notes that a Subchapter V debtor may propose a plan that includes selling all assets to pay creditors, just like PASE has filed. Section 1181 of the Bankruptcy Code lists sections of the Code that do not apply in Subchapter V cases. It does not exclude Section 1123(b)(4), which provides that a chapter 11 plan may provide for the sale of all or substantially of the property of the estate and the distribution of proceeds to creditors and equity interest holders. *See* 11 U.S.C. §§ 1181, 1123(b)(4). It also does not exclude Section 1129(a)(11), which states "confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization . . . unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11).

This Court's ruling resembles another decision involving an objection to the Subchapter V designation of a company: *Offer Space, LLC*, 2021 WL 1582625. The *Offer Space* debtor provided vendor marketing solutions to direct marketers using a proprietary software.[13] But on the petition date it was no longer an operational business.[14] The U.S. Trustee objected to the Subchapter V designation and argued the debtor was not engaged in commercial or business activities on the petition date. The bankruptcy court analyzed the plain meaning of the statute and overruled the Trustee's objection. The court found that the debtor was engaged in commercial or business activities by having active bank accounts, accounts receivable, analyzing counterclaims against a third party, and taking steps to wind-down its business and realize value for its assets.[15] And, similar to this case, the court rejected efforts to conflate business operations with commercial or business activities. The court noted that Congress did not elect to use the term "operations"

---

[13] *Id.* at *1.

[14] *Id.*

[15] *Id.* at *4.

in Section 1182(1)(A). And that "activities" and "operations" are not interchangeable.[16]

The objectors want the Court to follow the holdings in *In re Johnson*, 2021 WL 825156, and *In re Thurmon*, 625 B.R. 417 (Bankr. W.D. Mo. 2020), where the bankruptcy courts sustained objections to Subchapter V designations. But those cases are distinguishable on the facts. In *Johnson*, two individual debtors filed a joint chapter 7 case and then tried to convert to a Subchapter V case to avoid the U.S. Trustee's discharge objection.[17] One debtor owned and managed several oil and gas companies that were defunct before the petition date.[18] On the petition date, neither of the debtors owned an interest in any operating business and did not engage in any business of their own.[19] The debtors also did not sell any goods or services, or have any personal business expenses outside potential liability from the defunct companies.[20] Their sole source of income was from their status as W-2 employees for other companies.[21] The bankruptcy court held that being employees on a job is not "engaged in commercial or business activities" under Section 1182(1)(A).[22]

Similarly, *Thurmon* involved joint individual debtors who previously operated two pharmacies.[23] As of the petition date, the debtors were not operating the pharmacies and had sold most of their business assets.[24] The bankruptcy court rejected the debtors' claim that they were engaged in commercial or business activities because their non-operational pharmacies remained in good standing under Missouri law.[25] The court reasoned that maintaining an empty shell company in good standing was not enough to qualify as a Subchapter V debtor.[26]

For the reasons stated above, unlike *Johnson* and *Thurmon*, PASE was engaged in commercial or business activities, which is what Section 1182(1)(A) requires. PASE is therefore permitted to proceed as a Subchapter V debtor.

---

[16] *Id.* at *5. *See also In re Ikalowych*, 2021 WL 1433241, at *16 (holding wind-down work itself constitutes commercial or business activities).

[17] *See In re Johnson*, 2021 WL 825156, at *1, *3.

[18] *Id.* at *2.

[19] *Id.* at *3.

[20] *Id.*

[21] *Id.*

[22] *Id.* at *8.

[23] 625 B.R. at 420.

[24] *Id.*

[25] *Id.* at 423.

[26] *Id.*

## **ORDER**

PASE is a Subchapter V debtor under Section 1182(1)(A) of the Bankruptcy Code. The Court overrules the U.S. Trustee and Oxbow objections.

Signed: July 01, 2021

_____
Christopher Lopez
United States Bankruptcy Judge